IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BASF CORPORATION, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 14-1204-RGA |
| JOHNSON MATTHEY, INC., | : |
| Defendant. | : |

**MEMORANDUM ORDER**

Plaintiff moves to strike the expert report of Professor Lipson. (D.I. 169). The motion has been fully briefed. (D.I. 169, 176, 184). Professor Lipson is a well-qualified professor of contract law. His opening expert report has been provided (D.I. 169, Exh. A), and relates to whether Defendant offered to sell, or did sell, various products before November 3, 2007. Defendants state (and, for purposes of this motion, there is no dispute that) November 3, 2007, is the "critical date" for assessing whether art is prior art. From Professor Lipson's report, I gather that Defendant's position is that it sold anticipating prior art to three customers before November 3, 2007, and made commercial offers for sale to the three customers and a fourth customer before that date.

The expert report has two main components. It contains various statements of relevant legal principles, mostly contract, some patent, none of which, for purposes of this motion, are disputed. It also contains Professor's Lipson's characterization and analysis of business documents and fact testimony to support his conclusions about when "commercial offers to sell"

and actual sales took place. There is nothing in the expert report that could be called customs and practices evidence.

There is little evidence in the expert report that Professor Lipson has brought any of his expertise to this exercise. For example, in the section relating to Daimler, Professor Lipson notes that "[t]he most obvious reason [the proposal] would constitute an offer is because [a part of it] is labeled 'Commercial Offer.'" (D.I. 169, Exh. A., ¶ 32). He later notes, "a sale of the twenty (20) catalyst system samples occurred on or around April 3, 2007 when [Defendant] sent an order acknowledgement to [Daimler], on May 17 or 31, 2007 when these samples were actually shipped and invoiced." (*Id.*, ¶ 63). Similarly, in the section relating to Cummins, Professor Lipson relies on documents in which Defendant states "it 'appreciates this opportunity to offer our commercial package . . ." and where it lays out "'the basis for our commercial offering," to conclude that there was a commercial offer for sale. (*Id.*, ¶¶ 69, 72). And he relies on deposition testimony and various documents to conclude there was a timely sale to Cummins. The expert report's sections on the other two customers are similar, although not quite as completely non-reliant on the Professor's expertise.

There is, in my opinion, nothing in the report that relies upon the Professor's legal expertise other than the things that are ultimately entrusted to the Court, that is, to correctly instruct the jury on the relevant legal principles. The Professor indicates no particular expertise in review of purchase orders, invoices, product shipping records, or the like. He indicates no particular expertise in interpreting what the fact witnesses who have been deposed have said. He indicates no reliance on anything relevant to the particular industry.

In my opinion, any reasonably literate English-speaker could apply the legal principles to the factual record on the relevant sale and offer to sell issues.[1] As the Advisory Committee Notes to Rule 702 stated in 1972: "'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.'" The only specialized knowledge that Professor Lipson has is the same thing – contract law – which in our system is my responsibility.[2] For the most part, his expert report outlines the closing argument one might expect Defendant's lawyer to make after the jury has heard the underlying testimony and seen the underlying documents. Thus, I will strike Professor Lipson's report as not being helpful. *See Berckeley Investment Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) (the court "has discretion to determine whether expert testimony will help the trier of fact").

Defendant argues that I have permitted experts to testify about German law and Swiss law in previous cases. (D.I. 176, p.7). True, but not particularly relevant. *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not . . . admissible under the Federal Rules of Evidence.").

I have not examined the Epling report. (*See* D.I. 169, p.3 n.2). It is a throw-in on Plaintiff's motion, and I do not believe Defendant responded to it. I request the parties meet-and-confer in light of this Memorandum Order, and advise within ten days whether there is any disagreement on its impact on that report.

---

[1] This seems particularly so when deciding if and when a sale occurred. A commercial offer of sale is a little more complex.
[2] Defendant states that the jury "would better comprehend the issues presented by a witness in a question and answer format th[a]n with jury instructions given at the close of evidence." (D.I. 176, p.7).

Plaintiff requests its fees and costs in making this motion. (D.I. 169, p.1 n.1). The cited authority for making this request is extremely limited – one district court case where the party was advised in advance that if it unsuccessfully took an action, it would be liable for the associated costs. It is true that I indicated my strong doubt[3] that there was any merit to Defendant's proffer of Professor Lipson's testimony, but Defendant states that it is important to its case. (D.I. 176, p.1). The record at the time was less developed. My strong doubt is not a ruling, and, occasionally, argument persuades me my original position was mistaken. In order to make an appropriate record, then, we needed to have the briefing. Further, while I have not been persuaded to adopt Defendant's position, I do not regard it as being frivolous. The motion to strike (D.I. 169) is **GRANTED**. The request for fees and costs is **DENIED**.

IT IS SO ORDERED this 6 day of June 2018.

Richard G. Andrews
United States District Judge

---

[3] I knew the Washington Generals had won once. I was not aware they had won six times.